RONALD M. GOULD, Circuit Judge:
This case involves the undue hardship provision of 11 U.S.C. § 523(a)(8). After debtor-appellant Rosemary Rifino (“Rifi-no”) filed an adversary proceeding seeking to discharge her student loan obligations, the bankruptcy court ruled that Rifino’s loans were dischargeable as an undue hardship pursuant to 11 U.S.C. § 523(a)(8). The defendants, holders of Rifino’s student loan obligations, appealed to the district court, which reversed the bankruptcy court and reinstated Rifino’s loans. We have jurisdiction over Rifino’s appeal pursuant to 28 U.S.C. § 158(d). We hold that the district court correctly determined that Rifino was not entitled to a discharge on undue hardship grounds, and affirm.
FACTS AND PROCEDURAL BACKGROUND
At the time of the bankruptcy adversary proceeding, Rifino was forty-one years old, and a single mother with a ten-year-old son. Rifino earned a Bachelor of Science degree from the University of Oregon in 1991 and a Master of Social Work (“MSW”) degree from the University of Washington in 1994. Rifino financed her education by acquiring federally insured student loans totaling approximately $69,000 from various lenders, including Sallie Mae, the University of Oregon, the Oregon State Scholarship Commission, the University of Washington, the Northwest Education Loan Association, and the William D. Ford Federal Direct Loan Program. Most of Rifino’s student loans obligations did not go into repayment status until August 1996.
At the time of the adversary proceeding, Rifino was a social worker at Ryther Child Center, earning a gross annual salary of $27,591.36 and a net monthly salary of $1,898. Rifino’s stated monthly expenses totaled approximately $1,897, and included tanning salon visits, cable television, a new car payment, and expenses related to her son’s enrollment at Seattle Country Day School, a private elementary school. Although Rifino’s son had a partial scholarship to this school, the cost of tuition and fees not covered by the scholarship totaled $1,780 for the 1993-1994 academic year *1086 and $1,400 for the 1994-1995 academic year. These expenses were in addition to child care expenses. Rifino has paid for her son to participate in Aikido, swimming lessons, skating lessons, Little League, and cross country-CYO. Rifino’s stated monthly expenses did not include child care during school breaks, clothing, or maintenance for her car.
Rifino filed a Chapter 7 bankruptcy petition in June 1996 seeking to discharge her consumer debt. The petition was granted on September 16,1996. On September 17, 1996, Rifino commenced an adversary proceeding seeking an undue hardship discharge of her student loan obligations under 11 U.S.C. § 523(a)(8). Rifino named Sallie Mae, the University of Oregon, the Oregon State Scholarship Commission, the University of Washington, the Northwest Educational Loan Association (“NELA”), and the William D. Ford Federal Direct Loan Program (“United States”) as defendants in the adversary proceeding.
The adversary proceeding was tried before the bankruptcy court on September 23-24, 1997. The bankruptcy court entered judgment in favor of Rifino, ruling that Rifino would suffer an undue hardship if her student loans were not discharged.
All defendants timely appealed, electing to have their appeals reviewed by the district court as opposed to a bankruptcy appellate panel. See 28 U.S.C. § 158(c)(1) (stating that an appeal is to be heard by a bankruptcy appellate panel unless any party elects to have such appeal heard by the district court); see also Fed. R. Bankr.P. 8001(e). Pursuant to a stipulation of all the parties, the University of Oregon and the Oregon State Scholarship Commission moved to dismiss their appeals and the district court granted the dismissal with prejudice.
The district court reversed the bankruptcy court’s discharge order and reinstated Rifino’s student loan debt. Addressing the “undue hardship” discharge provision of 11 U.S.C. § 523(a)(8), the court held that the bankruptcy court erroneously applied the law to Rifino’s claims.[1] Specifically, the court explained that “there is nothing exceptional about Rifino’s circumstances and there are no additional circumstances that indicate long-term hardship.” On the issue of good faith, the court reasoned, “Rifino has not made any payments on her loans and has not made any effort to repay her loans at any time. The timing of Rifino’s bankruptcy filing, her choice to file under chapter 7 rather than chapter 13, and her refusal to consolidate her loans further demonstrate an absence of good faith.”
Rifino now appeals.
ANALYSIS
I
“Because this court is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court’s decision.” Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). We review the bankruptcy court’s findings of fact under a clearly erroneous standard. In re Pena, 155 F.3d 1108, 1110 (9th Cir.1998). “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574, 105 S.Ct. 1504, 84 *1087 L.Ed.2d 518 (1985). We review de novo the bankruptcy court’s application of the legal standard in determining whether a student loan debt is dischargeable as an undue hardship. In re Taylor, 223 B.R. 747, 750 (9th Cir.BAP 1998).
II
Rifino contends that the district court improperly substituted its judgment [2] for that of the bankruptcy court by concluding that she failed to establish that repayment of her student loans would present an “undue hardship.” We find Rifino’s arguments unpersuasive.
Generally, student loan obligations are presumed to be nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8). Section 523(a)(8) provides:
A discharge under section 727 ... does not discharge an individual debtor from any debt — for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor’s dependents.
11 U.S.C. § 523(a)(8) (emphasis added).[3] Although “undue hardship” is not defined in the Bankruptcy Code, this court has recognized that “ ‘[t]he existence of the adjective “undue” indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans....’” Pena, 155 F.3d at 1111 (quoting In re Brunner, 46 B.R. 752, 753 (Bankr.S.D.N.Y.1985), affd 831 F.2d 395 (2d Cir.1987)).
To determine if excepting student loans from discharge will create an undue hardship on a debtor, the Ninth Circuit has adopted the three-part test established by the Second Circuit in Brunner. See Pena, 155 F.3d at 1112. To obtain a discharge of a student loan obligation, the debtor must prove:
(1) that the debtor cannot maintain, based on current income and expenses, a “minimal” standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debt- or has made good faith efforts to repay the loans.
Brunner, 831 F.2d at 396. Under this test, the burden of proving undue hardship is on the debtor, and the debtor must *1088 prove all three elements before discharge can be granted. In re Faish, 72 F.3d 298, 306 (3d Cir.1995). If the debtor fails to satisfy any one of these requirements, “the bankruptcy court’s inquiry must end there, with a finding of no dischargeability.” Id.
A
The first prong of the Brunner test requires the debtor to prove that she “cannot maintain, based on current income and expenses, a ‘minimal’ standard of living for herself and her dependents if forced to repay the loans.” Brunner, 831 F.2d at 396. To meet this requirement, the debtor must demonstrate more than simply tight finances. In re Nascimento, 241 B.R. 440, 445 (9th Cir. BAP 1999) (citation omitted). “In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness.” Id. (citation omitted).
In this ease, the bankruptcy court found that Rifino was “barely living within a minimal standard” and that “there are no excess funds in her budget which could be used for repayment of the loans.” The bankruptcy court also noted that while “tilt is conceivable that [Rifino] could reduce some of the items in her budget, ... such reductions would be minimal and inconsequential.”
NELA, Sallie Mae, the United States, and- the University of Washington (collectively “appellees”) contend that the bankruptcy court’s findings are clearly erroneous because Rifino’s budget contains unnecessary items such as tanning, cable television, and a new car. Appellees contend that because Rifino’s budget does not constitute a minimal standard of living, the bankruptcy court clearly erred in granting Rifino a discharge of her student loan debt.
Some courts have declined to discharge student loan debt where the debtor’s budget included items such as cable television, a new car, and private schooling for a child. See Commonwealth of Va. State Educ. Assistance Auth. v. Dillon, 189 B.R. 382, 385-86 (Bankr.W.D.Va.1995) (denying discharge of educational debt and finding debtor incurred $35 per month on cable television); Faish, 72 F.3d at 307 (rejecting claim of undue hardship by debtor who wanted to buy a car rather than continue to take the bus); Perkins v. Vermont Student Assistance Corp., 11 B.R. 160, 161 (Bankr.D.Vt.1980) (finding that purchase of new car was self-imposed hardship); In re Conner, 89 B.R. 744, 749 (Bankr.N.D.Ill. 1988) (finding that choosing to send children to private school was self-imposed hardship). However, while a number of courts have declined to discharge student loan obligations in such circumstances, and though a close question is presented, the bankruptcy court’s refusal to do so here is not necessarily clearly erroneous. See Anderson, 470 U.S. at 574 (“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.”).
We conclude that the bankruptcy court did not clearly err in finding that Rifino’s standard of living would fall below a minimal level if she were required to repay her student loans.
B
The second prong of the Brunner test requires a debtor to prove that “additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans.” Brunner, 831 F.2d at 396. We have explained that this prong “is intended to effect ‘the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonex- *1089 cepted debt.’” Pena, 155 F.3d at 1111 (quoting Brunner, 831 F.2d at 396).
In discharging Rifino’s student loan obligations, the bankruptcy court reasoned:
Next, as to whether the debtor’s present financial circumstances are likely to persist in the future or during the repayment period ... [e]ertainly, on the evidence, if the debtor remains in her present employment, her circumstances are not likely to improve.
This factual finding is not supported by the record and is clearly erroneous.
At Rifino’s adversary proceeding, Dr. John Longris (“Dr. Longris”), the Associate Dean for Curriculum and Student Affairs at the University of Washington School of Social Work, testified generally about the earning potential of individuals employed as social workers. Dr. Longris explained that although salaries for social workers tend “to stay a little flat over the beginning years of the career,” salaries typically increase after approximately five years of employment. After gaining experience, social workers with MSW degrees often move into administrative positions, with annual salaries ranging from $47,000 to $65,000, or private practice, with annual salaries up to $75,000. Dr. Longris also testified that numerous opportunities for advancement exist for individuals with a MSW degree, including supervisory roles, agency administration, policy analysis, policy development and implementation at state and federal levels, and private practice.
The record demonstrates that at the time of the adversary proceeding, Rifino was a professionally employed social worker at Ryther Child Center, earning a gross annual salary of $27,591.36. At that time, Rifino was only three years into her employment as a social worker and had already received two salary increases. Given the uncontested testimony of Dr. Lon-gris, we hold that the bankruptcy court clearly erred in concluding that Rifino’s circumstances are likely to persist for a significant portion of the repayment period of her student loans.[4]
CONCLUSION
Rifino failed to prove that her present circumstances are likely to persist for a significant portion of the repayment period of her student loans. We hold that Rifi-no’s student loans are not dischargeable pursuant to 11 U.S.C. § 523(a)(8).
AFFIRMED.

. The district court also dismissed appellee, the University of Washington, finding that sovereign immunity barred Rifino’s adversary proceeding. Because the University of Washington withdrew its sovereign immunity claim on appeal to this court, we instruct the district court to vacate that part of its opinion. We express no view on the merits of the University of Washington’s claim.

. While the district court was obliged to accept the bankruptcy court's findings of fact unless clearly erroneous, it was not required to accept its conclusions as to the legal effect of those findings. Brunner v. N.Y. State Higher Educ. Seivs. Corp. (In re Brunner), 831 F.2d 395, 396 (2d Cir.1987). Determining whether payment of Rifino’s student loans would constitute an undue hardship under 11 U.S.C. § 523(a)(8) required the district court to reach a conclusion as to the legal effect of the bankruptcy court's findings regarding her circumstances. Id. Thus, the district court properly reviewed the bankruptcy court's determination of undue hardship.

. This version of 11 U.S.C. § 523(a)(8) became effective on October 7, 1998. The revision repealed a provision controlling the dis-chargeability of student loans that became due more than seven years prior to filing the bankruptcy petition. Undue hardship is now the only basis for discharging student loans. The prior version of the statute would not produce a different result in this case because Rifino filed her Chapter 7 petition less than seven years after her student loans first became due.

. Because Rifino has failed to satisfy the second prong of the Brunner test, our “inquiry must end [here], with a finding of no dis-chargeability.” Faish, 72 F.3d at 306. We need not and do not consider arguments relating to the third prong of the Brunner test— whether Rifino has made a good faith effort to repay her loans.
Also, Rifino’s argument that, as a prevailing party, she would be entitled to an award of attorney’s fees is foreclosed by our affirmance and need not be further addressed. However, we are not suggesting that Rifino would have been entitled to attorney's fees had we reversed. See In re Fobian, 951 F.2d 1149, 1153 (9th Cir.1991) (holding that discharge proceeding is not an action on the contract and reciprocal attorney’s fees statutes are not implicated). That issue is left for another day and another case where it must be decided.