**In re Elizabeth Marie HOWE, Debtor.**

**Education Credit Management Corporation, Appellant,**

v.

**Elizabeth Marie Howe, Appellee.**

**BAP No. CC–04–1133–PMaMo.**
**Bankruptcy No. SV 02–11958–GM.**
**Adversary No. 03–01186–GM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 22, 2004.

Filed Jan. 6, 2005.

Scott A. Schiff, Soukup & Schill, LLP, Los Angeles, CA, for Educational Credit Management Corporation.

Russell A. McClain, Los Angeles, CA, for Elizabeth Marie Howe.

Before PERRIS, MARLAR and MONTALI, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

The issue in this appeal is whether the bankruptcy court erred in granting the debtor a partial discharge of her student loan debt pursuant to § 523(a)(8).[1] Because the bankruptcy court applied an incorrect standard in determining whether the debtor could maintain a minimal standard of living if forced to repay her student loans, we REVERSE and REMAND.

## FACTS

From 1991 through 1995, Elizabeth Marie Howe ("debtor") was enrolled in a mas-

ter of fine arts program, concentrating on film production, at Loyola Marymount University. Debtor financed her graduate education with student loans. At the time of trial, the aggregate unpaid principal and interest due on the notes currently held by Education Credit Management Corporation ("creditor") was approximately $81,019.22.

After filing her chapter 7 petition, debtor initiated an adversary proceeding to determine the dischargeability of her student loan debt. The bankruptcy court announced its decision on the record at the conclusion of the trial. The court found that debtor met her burden of proving that excepting the total debt from discharge would be an undue hardship. The court discharged all of debtor's student loan debt except for $36,000, ordering that debtor pay that amount, without interest, at the rate of $100 a month for thirty years.

Creditor timely appeals.

## ISSUE

Whether the bankruptcy court erred in granting a partial discharge of debtor's student loan debt.

## STANDARDS OF REVIEW

A decision that student loans impose an undue hardship is a legal question to be reviewed *de novo*, but the factual findings underlying that decision are reviewed for clear error. *In re Rifino*, 245 F.3d 1083, 1086–87 (9th Cir.2001); *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987).

## DISCUSSION

Section 523(a)(8) provides that a bankruptcy discharge does not discharge a

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

debtor from a qualifying student loan debt, unless excepting the debt from discharge would impose an undue hardship on the debtor.[2] A debtor must satisfy the following three-part test to establish undue hardship:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living ... if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*In re Rifino*, 245 F.3d 1083, 1087 (9th Cir.2001)(quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987)). If a debtor proves that the undue hardship test is met as to only a portion of the debt, a court can, as it did here, partially discharge the debt. *In re Saxman*, 325 F.3d 1168, 1173 (9th Cir. 2003).

Creditor argues that debtor did not satisfy any prong of the applicable three-part test, and thus that the bankruptcy court erred in allowing a partial discharge of debtor's student loan debt. We conclude that the bankruptcy court applied an incorrect standard in evaluating whether debtor could maintain a minimal standard of living if she was forced to repay her student loans. The second and third prongs of the undue hardship test presuppose that a debtor has satisfied the first prong. Therefore, the bankruptcy court will need to reevaluate whether the requirements of the second and third prongs are satisfied if, after applying the correct standard, it determines that debtor cannot maintain a minimal standard of living if forced to repay her student loans.

We have rejected a rule "that a person must fall below the Poverty Guidelines to discharge a student loan[.]" *In re Nascimento*, 241 B.R. 440, 445 n. 4 (9th Cir. BAP1999). *See also* 4 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 523.14[2] (15th ed. Rev.2003) ("[T]he federal poverty level is too strict a standard for measuring whether the debtor's standard of living is at a minimal standard level and should not be employed for that purpose."). Creditor's attorney conceded at oral argument that a minimal standard of living under § 523(a)(8) is something better than that afforded under the federal poverty guidelines.

■ However, although the bankruptcy court suggested to the contrary in its findings, a minimal standard of living under § 523(a)(8) does not equate to a middle class standard of living.[3]

> The *Brunner* standard meets the practical needs of the debtor by not requiring that he or she live in abject poverty ... before a student loan may be discharged. On the other hand, the *Brunner* standard safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would

---

2. The parties stipulated that debtor's student loan debts were "made, insured or guaranteed by a governmental unit, or made ... under a program funded in whole or in part by a governmental unit or nonprofit institution within the meaning of 11 U.S.C. § 523(a)(8)." Stipulation of Admitted Facts and Exhibits for Trial, ¶ I.8.

3. The bankruptcy court stated as follows: "I don't think it's the intent of Congress to force middle class people into poverty in order to repay student loans." Transcript of January 15, 2004 Trial, 96:4–6.

require some major personal and financial sacrifices.

*In re Faish,* 72 F.3d 298, 305–06 (3d Cir. 1995).

■■■ Application of the first prong of the undue hardship test requires an examination of a debtor's current finances. *Id.* at 305. The meaning of a "minimal standard of living" must be determined " 'in light of the particular facts of each case.' " *In re Cota,* 298 B.R. 408, 415 (Bankr. D.Ariz.2003) (quoting *In re Afflitto,* 273 B.R. 162, 170 (Bankr.W.D.Tenn.2001)). The bankruptcy court concluded that "the Internal Revenue Service Collection Financial Standards [('The IRS Standards')] establish what is a minimal standard of living and Plaintiff only has $100.00 a month in income above what the IRS Standards provide[.]" Judgment, at 2. The bankruptcy court erred both in its application of the IRS Standards to Debtor's finances and in simply adopting the IRS Standards, rather than conducting an individualized analysis of debtor's expenses as is required by § 523(a)(8).

### A. *Description of the IRS Standards*

The IRS Standards are used in determining a taxpayer's ability to pay delinquent taxes in two distinct contexts: (1) in determining the rate at which delinquent taxes must be paid under installment agreements, and (2) in determining the amount of delinquent taxes that will be written off in connection with determining whether to accept a taxpayer's offer in compromise. *See* 26 U.S.C. § 7122; 34 AM.JUR.2D FEDERAL TAXATION ¶ 70361 (2004). However, allowable expenses are viewed more restrictively in compromise cases than in installment cases. *See* Priv. Ltr. Rul. 99–48–028 (December 3, 1999).

The IRS Standards, which can be found at *www.irs.gov/individuals/article/0,,id= 96543,00.html* (July 27, 2004), were devel-oped to ensure that a taxpayer would have "adequate means to provide for basic living expenses." 26 U.S.C. § 7122(c)(2)(A); *In re Ivory,* 269 B.R. 890, 906 (Bankr. N.D.Ala.2001).

Allowable expenses include those expenses that meet the necessary expense test. The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income. The expenses must be reasonable. The total necessary expenses establish the minimum a taxpayer and family needs to live.

Internal Revenue Manual 5.15.1.7 (2004).

The IRS Standards consist of three categories of expenses. The first category is the National Standards for Allowable Living Expenses ("the living expense allowance"), which is based on income level and family size. The living expense allowance covers five types of expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. The second category is the Local Housing and Utilities Allowable Living Expenses ("the housing and utility allowance"), which is based on county of residence and family size. The final category is the Local Allowable Living Expenses for Transportation ("the transportation allowance"), which "consist[s] of nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs broken down by" location. IRS Standards.

The IRS Standards have some flexibility. Necessary expenses are determined according to the facts and circumstances of a particular case. 26 U.S.C. § 7122(c)(2)(B). Officers and employees of the IRS are instructed to depart from the IRS Standards if adherence to them would

result in a taxpayer having inadequate means to provide for basic, necessary living expenses. *Id.;* 34 Am.Jur.2d Federal Taxation ¶ 70361. Thus, necessary expenses may include expenses other than, or in excess of, those set forth in the IRS Standards. As is particularly relevant in this case, health care expenses may be allowed if necessary to the health or welfare of the taxpayer. *See* Internal Revenue Manual 5.15.1.10.

B. *Application of the IRS Standards to Debtor*

Debtor's net monthly income is $3,172. Her monthly expenses are $3,626.[4] Exhibit D. Under the IRS Standards (as of July 27, 2004), debtor's maximum living expense allowance is $722, her maximum housing and utility allowance is $1,539, and her maximum transportation allowance is $824. These three numbers total $3,085. The difference between debtor's income and the maximum expenses allowed under the IRS Standards set forth above is $87. The bankruptcy court apparently rounded this number up in determining that debtor has $100 available each month to pay on her student loans. There are a number of problems with the bankruptcy court's reliance on and application of the IRS Standards in this case.

First, while the IRS Standards allow taxpayers the total living expense allowance without regard to the amount actually spent, the housing and utility and transportation allowances are limited to the lesser of the maximum allowance amounts or the amounts a taxpayer actually spends. In this case, the bankruptcy court allowed

debtor the maximum amounts allowed under the IRS Standards for housing and utility and transportation expenses, even though debtor's actual expenditures for these expenses are less than the maximum amounts permitted under the IRS Standards.

Second, the bankruptcy court erred in its application of the IRS Standards by not considering debtor's medical expenses. Debtor was diagnosed with major depression in 1999. Her budget includes expenses totaling $943[5] for psychotherapy and medication for depression and other medical conditions. Debtor testified that she has a $454 deficit each month, and that she makes ends meet by juggling expenses and doing without necessities, specifically including health care and prescription drugs for her depression.

■ As the bankruptcy court noted in its ruling, there was no evidence that debtor's medical expenses were unnecessary or excessive. *See* Transcript of January 15, 2004 Trial, 99:6–8. We reject creditor's argument that a minimal standard of living under § 523(a)(8) does not encompass necessary healthcare expenses.

Nothing in the record suggests that the bankruptcy court found debtor's budget unreasonable. In fact, the bankruptcy court stated in its oral ruling that debtor's "total expense picture is fine."[6] Transcript of January 15, 2004 Trial, 97:18. Even so, the court determined that debtor had a monthly surplus of $100 based solely on the amount by which her income ex-

---

4. Debtor's estimated monthly expenses at the time of trial were $638 more than those shown in her Schedule J. Debtor explained that her expenses increased, because she no longer has health insurance.

5. There is a $15 addition error in the subtotal for prescriptions in Exhibit D.

6. While one can argue, as creditor does, that $50 per month for internet and $140 per month for pet expenses is not necessary, the argument is academic in this case, given that debtor's expenses exceed her income by $454 per month.

ceeds the maximum amounts allowed under the living expense, housing and utility, and transportation allowances.

The following chart demonstrates how the bankruptcy court erred in applying the IRS Standards, and the impact of consideration of debtor's healthcare expenses:

| IRS Category | Debtor's Actual Expense (per Ex. D) | | IRS Maximum | Amount Permitted by IRS |
|---|---|---|---|---|
| Living Expense Allowance | Food | $ 589 | $ 722 | $ 722 |
| | Laundry | 12 | | |
| | Tax software | 5 | | |
| | Personal care | 80 | | |
| | Clothing | 25 | | |
| | Cats | 140 | | |
| | Total | $ 851 | | |
| Housing & Utility Allowance | Rent | $1000 | $1539 | $1342 [7] |
| | Maintenance & miscellaneous | 20 | | |
| | Brush clearance | 8 | | |
| | Utilities | 314 | | |
| | Total | $1342 | | |
| Transportation Allowance | Car payment | $ 203 | $ 824 | $287 [8] |
| | Insurance | 100 | | |
| | License, registration | 13 | | |
| | Oil changes | 20 | | |
| | Other service | 13 | | |
| | Repairs | 50 | | |
| | Gas | 91 | | |
| | Total | $ 490 | | |
| Sub-total | $2683 | | $3085 | $2351 |
| Medical | $ 630 | | Actual & Necessary | $ 630 |
| Prescriptions | $ 313 | | Actual & Necessary | $ 313 |
| Total | $3626 | | $4028 | $3294 |

## C. The Role of the IRS Standards in Undue Hardship Determination under § 523(a)(8)

■ While a bankruptcy court may consider the IRS Standards as one piece of evidence in relation to its first prong analysis, see In re Cota, 298 B.R. 408 (Bankr. D.Ariz.2003); In re Ivory, 269 B.R. 890 (Bankr.N.D.Ala.2001), it should not use the IRS Standards as the sole measure of

7. IRS Standards permit the lesser of actual expenses or maximum amount allowed for housing and utility expenses.

8. IRS Standards permit the lesser of actual expenses or maximum amount allowed for transportation expenses. In addition, the IRS Standards would not allow the $203 car payment savings account allowed by the bankruptcy court, because debtor is not actually making a car payment.

what is necessary to maintain a minimal standard of living.

The IRS Standards may lead to an erroneous calculation in the § 523(a)(8) context for a number of reasons. First, the living expense allowance under the IRS Standards increases not only with a debtor's family size, but also with his or her income. What is necessary for a minimal standard of living may differ depending on certain factors commonly associated with income. For example, a debtor employed in a professional occupation may require a higher clothing budget than a non-professional debtor. However, all other factors being equal, the amount necessary to maintain a minimal standard of living under § 523(a)(8) should not be adjusted upward just because one debtor has a higher income than another.

■ Second, a bankruptcy court should not allow a debtor more than the debtor's actual expenses. Sometimes the amount that a debtor actually spends will be less than the amount permitted under the IRS Standards. Allowing a debtor more than he or she actually spends is inconsistent with the requirements of economy and sacrifice necessary to obtain discharge of student loan debt under § 523(a)(8).

Third, the IRS Standards do not provide for certain expenses that courts have recognized as necessary to the maintenance of a minimal standard of living in § 523(a)(8) cases. For example, this Panel has held that, depending on the circumstances, a bankruptcy court may properly find that the requirements of the first prong are met, even where the debtor's budget includes an allowance for the purchase of a new car. See *In re Birrane*, 287 B.R. 490, 496 (9th Cir. BAP 2002). This is so because, in determining what is required to maintain a minimal standard of living, it is necessary to budget for the long-term. In this case, the bankruptcy court ordered a thirty-year repayment period.

Debtor made her last $203 car loan payment shortly before the trial in this matter. Even so, the bankruptcy court allowed debtor to include $203 in her monthly budget as a savings device for a new car, because the court found that debtor would need to replace her car soon, given its age and condition. The bankruptcy court did not err in allowing this expense, but the IRS standards would not permit such a result.

We reject creditor's argument that the IRS Standards are useful only as establishing a ceiling on a debtor's expenses. Creditor states that the IRS Standards represent an average standard of living, not a minimal standard of living. This argument mischaracterizes the nature of the IRS Standards. The IRS Standards represent average expenditures only for certain categories of basic living expenses. The IRS Standards do not represent an average or middle class standard of living. In addition, as we point out above, the IRS Standards do not provide for certain expenses that courts have recognized as necessary to the maintenance of a minimal standard of living in § 523(a)(8) cases.

■ Our decision only requires use of the proper methodology to determine whether debtor is entitled to discharge the student loans at issue. The result on remand ultimately may not be any more favorable to creditor. We reject creditor's argument that a debtor should be required to relocate to reduce her housing expense to the lowest possible amount, if the debtor's current housing expense is within the amount allowed under the IRS Standards, and the bankruptcy court finds that the expense satisfies § 523(a)(8)'s minimal standard of living requirement.

## CONCLUSION

We conclude that the bankruptcy court applied an incorrect standard in considering the first prong of the undue hardship analysis, because it erred in its application of the IRS Standards and in simply adopting the IRS Standards instead of conducting an individualized analysis into whether debtor's actual expenses are necessary to the maintenance of a minimal standard of living. Therefore, we REVERSE and REMAND.