In re Barbara VOELKEL, Debtor.

Barbara Voelkel, Appellant,

v.

Karen S. Naylor, Chapter
7 Trustee, Appellee.[1]

BAP No. CC–04–1251–MOMKMA.
Bankruptcy No. SA 04–11677–JR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Nov. 18, 2004.

Filed March 11, 2005.

1. The chapter 7 Trustee is included as appellee for notice purposes only. She has not appeared in this appeal.

Richard G. Heston, Newport Beach, CA, for Barbara Voelkel.

Before: MONTALI, MARKELL,[2] and MARLAR, Bankruptcy Judges.

### OPINION

MONTALI, Bankruptcy Judge.

## I. INTRODUCTION

In this case, Barbara Voelkel ("Debtor") appeals the bankruptcy court's *sua sponte* order dismissing her chapter 7[3] case for substantial abuse. We REVERSE and REMAND because the court did not rebut the section 707(b) presumption, and we hold that the presumption in favor of a debtor's right to bankruptcy relief prevents dismissal for substantial abuse unless the court articulates and explains the "clear" abuse it finds from the evidence before it. We also hold that a finding of substantial abuse that is based on Debtor's future ability to pay is erroneous when such ability to pay requires Debtor to live at or near a subsistence level.

## II. FACTS

Debtor filed chapter 7 bankruptcy on March 15, 2004, seeking to discharge $139,561 in consumer credit card debt incurred over a twenty-year period.[4] On the petition date, Debtor was single with no dependents, owned no non-exempt property, and lived in an apartment in Santa Ana, for which she paid $1,420 per month. She had been employed as a senior staff analyst for the County of Orange for thirteen years and ten months. According to Schedules I and J, her monthly income was $4,179.64, and her monthly expenses were $3,889, leaving disposable income of $290.64. In 2002 and 2003 she earned, respectively, $68,923 and $74,616.

Nine days after Debtor filed for bankruptcy, the bankruptcy court *sua sponte* entered an order to show cause why the case should not be dismissed for substantial abuse pursuant to Bankruptcy Code section 707(b) (the "OSC"),[5] as interpreted by *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908 (9th Cir.1988) and *Gomes v. United States Trustee (In re Gomes)*, 220 B.R. 84 (9th Cir. BAP 1998). The OSC recites Debtor's monthly income and expenses as set forth in her schedules, and identifies the following expenses as "primarily consumer debt" and/or appearing to be excessive such that granting a discharge would be a substantial abuse of the court's power: (1) $1,420 rent, (2) $90 Cable TV/Internet; (3) $50 home maintenance; (4) $500 food; (5) $210 clothing; (6) $60 laundry and dry cleaning; (7) $200 recreation; (8)

---

**2.** Hon. Bruce A. Markell, Bankruptcy Judge for the District of Nevada, sitting by designation.

**3.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**4.** According to Debtor's Schedule F, $34,886 (25%) was incurred in the 1980s and $104,675 (75%) between 1990 and 2004.

**5.** Accordingly, the OSC was timely. Rule 1017(e)(2), which governs *sua sponte* dismissals under section 707(b), states: "If the hearing is set on the court's own motion, notice of the hearing shall be served on the debtor no later than 60 days after the first date set for the meeting of creditors under § 341(a). The notice shall set forth all matters to be considered by the court at the hearing."

$488 car; and (9) $205 other: gifts/grooming.[6]

In response to the OSC, Debtor filed a declaration under penalty of perjury that established the following unchallenged facts:

(1) Debtor accumulated her debts over ten to twenty years, with most of the purchases for necessities such as gasoline, clothes, groceries, gifts, meals, and minimal travel. In about October 2002, Debtor realized she was spending more than she was earning and stopped making most purchases. There was no sudden change in financial circumstances; rather, the accruing interest pushed the debt to a level at which Debtor could no longer make the minimum payments, at which time she began to use her credit cards to take cash advances to cover the minimum payments.

(2) Debtor lived by herself in an apartment complex in Costa Mesa, occupying a one-bedroom unit with one bathroom and an extra room, which she used as a home office and storage area. Within three months, her monthly rent was scheduled to increase $71, from $1,420 to $1,491. Supplies used by Debtor to clean her apartment and other home-maintenance costs averaged $50 per month.

(3) Debtor worked at her office at the County, and had the ability to telecommute if she maintained an internet connection.

(4) Debtor's wardrobe consisted of conservative women's business suits required for her job, and casual, less expensive clothing to wear away from the office and at home. Purchasing these clothes cost on average $210 per month; dry-cleaning and laundering them cost $60 per month.

(5) Before filing for bankruptcy, Debtor decided to replace her 13–year old Nissan Sentra, which had 122,000 miles. Post-petition, Debtor purchased a 2004 Nissan Sentra, with a $488–per–month payment, not including insurance ($112) or operating expenses such as gas, oil changes, car washes and toll charges ($210).

(6) As a single woman living alone, Debtor spent little time at home, eating out at sit-down meals once a week for lunch and once or twice a week for dinner, with her remaining lunches at fast-food restaurants or sandwich shops. Food cost her $500 per month, or about $16.44 per day.

(7) Debtor saw an average of three movies per month and played golf twice a month, at a cost of $120 ($60 each). She spent $80 per month on newspaper and magazine subscriptions, occasional plays, sporting events, and concerts. Debtor also spent $205 per month for gifts for family and personal grooming, including hair-related services and products, and skin-care products. Having her hair cut, treated and styled on a regular basis was necessary to maintain an appropriate appearance as a senior staff analyst for the County. Debtor did not allocate the $205 between gifts and grooming, nor did she submit any information regarding the size of her family or frequency of her family's gift giving.

Through written opposition to the OSC, Debtor's counsel argued that: (1) a discharge would not be a substantial abuse of chapter 7 because Debtor's $290.64 disposable monthly income over thirty-six months would repay only 4.8% of her unsecured debts, which is not meaningful; (2) the court failed to sustain its burden of

---

[6]. Debtor's other scheduled expenses were as follows: (1) $80 electricity and heating fuel; (2) $30 water and sewer; (3) $75 telephone; (4) $65 medical and dental expenses; (5) $210 transportation (not including car payments); (6) $75 charitable contributions; (7) $17 renter's insurance; (8) $2 health insurance; and (9) $112 auto insurance.

producing evidence sufficient to overcome the section 707(b) presumption that Debtor is entitled to a discharge; (3) there was no evidence of bad faith; and (4) Debtor's budget did not show unreasonable expenses.

On April 28, 2004, the court held a hearing on the OSC (the "Hearing"). Counsel for the United States Trustee ("UST") appeared at the Hearing, and while not taking a position as to whether Debtor's case should be dismissed, contended that, under *Kelly* and *Harris v. United States Trustee (In re Harris)*, 279 B.R. 254 (9th Cir. BAP 2002), the court does not bear the burden of producing evidence in support of a *sua sponte* dismissal under section 707(b). Debtor's counsel argued that Debtor's expenses were not unreasonable because they were within a few dollars of the Internal Revenue Service's Collection Financial Standards (the "IRS Standards").

On the record at the Hearing, the court noted its previous determination that it need not generate evidence, and rejected the IRS Standards as irrelevant to determining net disposable income to fund a chapter 13 plan. The court applied the following standard for calculating net disposable income for purposes of determining substantial abuse under section 707(b):

> [D]isposable income means income which is received by the debtor which is not reasonably necessary to be expended for maintenance or support of the debtor or a dependent of the debtor. So the question is, what does she really

need in order to—that's reasonably necessary for her *subsistence?* (emphasis added).

Based on Debtor's response to the OSC, the court found that $90 was not unreasonable for cable Internet, given that Debtor telecommutes.[7] The court did not discuss Debtor's rent, and made no adjustments to it. The court expressly found that $50 was not reasonably necessary for home maintenance, and allowed nothing for this expense. The court found $300 for food to be an appropriate budget, and found reasonable $30 for laundry,[8] $50 for recreation, and $350 for a car. Without explaining the reasons underlying its decision, the court allowed $100 for clothes and $50 for gifts and grooming. The court allowed Debtor's $205.83 deduction for contribution to the County's version of social security.[9]

The following table summarizes the court's decision regarding the nine categories of expenses identified in the OSC:

| Expense | Scheduled amount | Allowed amount |
| --- | --- | --- |
| Rent | $1,420 | $1,420[10] |
| Cable TV/Internet | $90 | $90 |
| Home maintenance | $50 | $0 |
| Food | $500 | $300 |
| Clothing | $210 | $100 |
| Laundry and dry cleaning | $60 | $30 |
| Recreation | $200 | $50 |
| Car | $488 | $350 |
| Other: Gifts/Grooming | $205 | $50 |
| Total expenses [11] | $3,889 | $3,056 |

7. We note that Debtor never declared or argued to the bankruptcy court that she telecommutes; just that she was *able* to telecommute.

8. Debtor budgeted $60 for laundry and dry cleaning. The transcript from the Hearing reads that "the court will allow $30 a month as a reasonable laundry and—expense."

9. This amount is one of four payroll deductions from Debtor's gross monthly wages of $5,986.95.

10. The court did not question Debtor's $71 rent increase, which Debtor anticipated paying as of July 2004.

11. The total includes Debtor's expenses that were not questioned by the court. These expenses total $666. *See supra* note 6.

With Debtor's expenses so adjusted, the court calculated that Debtor would have $833 more per month to fund a chapter 13 plan. Added to Debtor's scheduled disposable income of $290.64 per month, the court calculated that Debtor would have $1,123 per month times thirty-six months, or $40,428, to fund a chapter 13 plan, which the court found would yield approximately thirty-percent repayment to her unsecured creditors.[12] In its computation, the court did not consider the effect of chapter 13 trustee fees[13] or Debtor's attorney fees on return to creditors, or the effect of Debtor's anticipated, unchallenged $71 rent increase.

The court made the following findings in support of its "substantial abuse" determination:

> Now, she has listed $139,561 in debt. Of which most of that debt involves the use of credit cards. So she has shown a[sic] inability to control her spending habits. Matter of fact, her spending habits [sic] out of control. And she wants this Court to sign off on a Chapter 7 discharge of approximately $140,000 of credit card debt when she has the ability to pay by controlling her expenses approximately $40,000 on a Chapter 13 plan. I would divide that by $139,000. Approximately 30 percent to her creditors. This is a substantial abuse, and based on the findings of the Court, [sic] and the question is whether or not you want to convert this case to a chapter 13 [sic] and have the Court dismiss it.

The court gave Debtor until May 4, 2004 to convert her case to chapter 13 or the case would be dismissed. When Debtor did not convert the case, the court filed an order dismissing it on May 4, 2004 (the "Dismissal Order"). The Dismissal Order was entered on the docket on May 5, 2004. On May 12, 2004, Debtor filed her timely notice of appeal.

## III. ISSUE

Debtor seeks a resolution of what she perceives to be conflicting decisions governing the evidentiary requirements applicable to section 707(b) dismissals depending on whether the movant is the bankruptcy judge or the UST. Debtor argues that the court abused its discretion by substituting its own value judgments for evidence required to overcome the presumption of entitlement to relief created by section 707(b) and that the court abused its discretion in dismissing her case under section 707(b). Thus the issue is:

Did the court abuse its discretion by *sua sponte* dismissing Debtor's case for substantial abuse under section 707(b) without expressly applying the section 707(b) presumption that Debtor is entitled to the requested relief, and without producing evidence of the reasonableness of Debtor's expenses?

## IV. JURISDICTION

The court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), and (b)(2)(O). We have jurisdiction under 28 U.S.C. § 158(a) and (b), which provide appellate jurisdiction over final orders. The

---

**12.** The precise percentage is 28.97%. The actual dollar amount is $40,451.04.

**13.** The chapter 13 trustee fee is not to exceed ten percent. 28 U.S.C. § 586(e)(1)(B)(i); (e)(2). There is no additional fee for converting a chapter 7 case to a chapter 13. *See* Fee Schedule, Central District of California Bankruptcy Court (issued in accordance with 28 U.S.C. § 1930(b) and Rule 1006). Debtor calculated the Central District chapter 13 trustee fee to be eleven percent, but did not explain the basis for this calculation.

Dismissal Order is a final order. *Kelly,* 841 F.2d at 911.

## V. STANDARD OF REVIEW

 An order dismissing a case for substantial abuse under section 707(b) is reviewed for abuse of discretion. *Gomes,* 220 B.R. at 86. A bankruptcy court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Id.;* Rule 8013 (weight accorded to bankruptcy court's factual findings). Before we may reverse under the abuse of discretion standard, we must be definitely and firmly convinced that the bankruptcy court committed a clear error of judgment. *Price v. United States Trustee (In re Price),* 280 B.R. 499, 501 (9th Cir. BAP 2002), *aff'd* 353 F.3d 1135 (9th Cir.2004).

## VI. DISCUSSION

### A. *Lack of findings*

A threshold issue is the effect of the court's lack of explanation regarding its reduction of Debtor's clothing expense from $210 to $100 and her gift/grooming expense from $205 to $50.[14] Rather than make findings regarding these two categories of expenses, the court simply allowed a fixed amount for them. Over a thirty-six-month plan period, the disposable income created by the court's adjustment of these two categories totaled $9,540. Without these funds, Debtor's repayment to creditors in a three-year chapter 13 plan, not considering chapter 13 trustee fees, Debtor's attorney fees, or Debtor's rent

increase, would equal twenty-two per-cent.[15] Although Debtor's clothing and gift/grooming expenses comprise part of the court's determination of ability to pay, the lack of findings regarding these expenses is immaterial if we can obtain a complete understanding of the issues from the record as a whole. *Harris,* 279 B.R. at 261.

The OSC reveals that the court perceived Debtor's clothing and gifts/grooming expenses as "excessive". Thus, although the court did not make findings at the Hearing regarding these expenses, the record is clear that the court perceived them as not necessary to support Debtor, as opposed to indicative of any bad faith. Because we can determine from the record the basis for the court's reduction of Debtor's clothing and gifts/grooming expenses, we may review the Dismissal Order.

### B. *Applicable law*

Section 707(b) allows a court to dismiss a chapter 7 bankruptcy case *sua sponte* when an individual has primarily consumer debt and the court finds that granting relief would be a "substantial abuse" of the provisions of chapter 7. Section 707(b) was added to the Bankruptcy Code in 1984 as part of a package of consumer credit amendments designed to reduce perceived abuses of chapter 7, such as debtors who could easily pay their creditors avoiding their obligations through the chapter 7 discharge. 6 Collier on Bankruptcy, ¶ 707.04 at 707–15 (Alan N. Resnick et al. eds., 15th ed.2001); S.Rep. No. 98–65 at 54 (1983).[16]

---

**14.** The "findings" requirement of Rule 7052(a) applies to proceedings to dismiss under section 707(b). Rule 1017(f)(1); 9014; *Harris,* 279 B.R. at 260 (Klein, J., dissenting). Although Rule 7052(a) provides that findings are unnecessary on motions, findings are desirable and ought to be made whenever decision of a matter requires the court to resolve

conflicting versions of the facts. *Canadian Comm'l Bank v. Hotel Hollywood (In re Hotel Hollywood),* 95 B.R. 130 (9th Cir. BAP 1988).

**15.** $40,451 – $9,540 / $139,561 = 22.15%.

**16.** Prior to the addition of section 707(b), "cause," as specified by section 707(a) was

Section 707(b) provides, in relevant part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. . . .

■ Thus, dismissal under section 707(b) requires: (1) a motion by a court or the UST; (2) a debtor who has primarily consumer debts; and (3) a finding that granting relief would be a "substantial abuse" of chapter 7. 11 U.S.C. § 707(b); *Price*, 353 F.3d at 1138.

In this case, the court moved for dismissal under section 707(b), and Debtor did not oppose the characterization of her debts as primarily consumer debts.[17] Thus, the issue on appeal is whether the court abused its discretion in finding—without expressly considering the section 707(b) presumption, and without producing any objective evidence regarding the reasonableness of Debtor's expenditures—that granting relief would be a substantial abuse of chapter 7.

### 1. *Substantial abuse*

There is no mechanical formula for determining whether a debtor's use of chapter 7 is a "substantial abuse." Rather, Congress committed this question to the discretion of bankruptcy judges. *Price*, 353 F.3d at 1140.

The seminal Ninth Circuit decision interpreting "substantial abuse" is *Kelly*. In that case, the court held that a debtor's ability to pay debts when due, as determined by the debtor's ability to fund a chapter 13 plan,[18] is the primary factor relevant to determining whether granting relief would be a substantial abuse. *Kelly*, 841 F.2d at 914. The court grounded this interpretation of substantial abuse in the legislative history, which shows that, as originally introduced in 1983, section 707(b) contained a formula for determining the exact point at which a debtor's ability to pay some debts would foreclose chapter 7 relief. *Kelly*, 841 F.2d at 914. This formula was eliminated, however, in favor of the open-ended formulation ultimately codified. *Id.* Congress stated that the purpose of the statute was to "uphold [ ] creditors' interests in obtaining repayment where such repayment would not be a burden," and said that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." *Id.* (quoting S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983)) (brackets in original).

the sole basis for dismissal of a chapter 7 case. 6 Collier, ¶ 707.04 at 707–15.

17. " '[C]onsumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

18. The standard term of a chapter 13 plan is three years. Section 1322(d). It would likely be error to calculate ability to pay over a longer period. *See Washington Student Loan Guar. Ass'n v. Porter (In re Porter)*, 102 B.R.

773, 777 (9th Cir. BAP 1989) (debtors must voluntarily choose to extend their plan beyond three years); *cf. Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1122 (9th Cir.2000) (bankruptcy court did not err in ordering repayment of non-dischargeable debt over five years); *but see Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 437–38 (6th Cir.2004) (dismissal for substantial abuse not abuse of discretion when adjusted disposable income was sufficient to pay 14–23% in hypothetical three- and five-year plans).

■ Last year, the Ninth Circuit reaffirmed the holding in *Kelly*, clarifying that while a court *may* consider the totality of circumstances to determine substantial abuse, it is not *required* to do so.[19] *Price*, 353 F.3d at 1140. Rather, a "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal." *Id.* (quoting *Kelly*, 841 F.2d at 914).

### 2. *Section 707(b) presumption*

■ Section 707(b) opaquely provides that: "[t]here shall be a presumption in favor of granting the relief requested by the debtor." The Ninth Circuit has interpreted this presumption as "a caution and a reminder" to the bankruptcy court that the Code and Congress favor the granting of bankruptcy relief. *Kelly*, 841 F.2d at 917. This means that, when the movant is the court, the court should "give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is *clearly* present." *Id.* (quoting 4 Collier § 707.08, at 707–19 (15th ed.1987)) (emphasis added).[20]

■ To rebut the section 707(b) presumption, evidence is required. *Harris*, 279 B.R. at 260–61; *see also Kelly*, 841 F.2d at 917; Fed.R.Evid. 301. When the movant is the court, the burden of produc-

ing evidence rests on the debtor and, if appropriate, other parties, and the court is relieved of the burden of producing evidence. *Kelly*, 841 F.2d at 917. The court that moves to dismiss under section 707(b) may, however, rely on its own value judgments to determine the reasonableness of a debtor's expenses. *Kelly*, 841 F.2d at 915 (affirming bankruptcy court's disallowance as excessive one-half of debtors' $500 per month recreation expense). When the movant is the UST, the presumption is rebutted only by objective, admissible evidence regarding the reasonableness of a debtor's expenses sufficient to support a finding of ability to repay. *Harris*, 279 B.R. at 261.

Excusing the court from the burden of producing evidence and imposing such burden on the UST is justified by the UST's ability to obtain and present evidence and the court's inability to do so.[21] For example, the UST has a duty to convene and preside at a meeting of creditors, at which the Debtor is required to appear and submit to examination about his or her finances under oath. 11 U.S.C. §§ 341, 343; Rule 2004. The court, however, may *not* participate in that meeting. 11 U.S.C. § 341(c). For this same reason, it is appropriate to allow a court to rely on its

---

**19.** The other factors identified by the court include: (1) whether debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (2) whether the schedules suggest that debtor obtained cash advances and consumer goods on credit exceeding her ability to repay them; (3) whether debtor's proposed family budget is excessive; (4) whether debtor's Schedules I & J misrepresent her financial condition; and (5) whether debtor has engaged in eve-of-bankruptcy purchases. *Price*, 353 F.3d at 1139–40 (citing 3 Norton Bankruptcy Law & Practice 2d § 67:5, at 67–10 (William L. Norton, Jr. et al. eds., 1997)).

**20.** *Cf. Harris*, 279 B.R. at 260 (finding of substantial abuse should be supported by pre-

ponderance of the evidence when movant is UST).

**21.** Relieving the court from the burden of producing evidence does not render a judge unable to identify appropriate cases for dismissal under section 707(b) or deprive the reviewing court of a record for review. Before dismissing a chapter 7 case *sua sponte* for substantial abuse, the court must set forth all issues to be considered at the section 707(b) hearing. Rule 1017(e)(2). This provides a debtor with an opportunity to introduce evidence to contradict the court's proposed findings, and enables the court to make specific findings regarding the reasonableness of a debtor's expenses.

value judgments to question the reasonableness of a debtor's expenses, while not permitting use of such judgments when the movant is the UST, who is able to develop other evidence. Otherwise the court would have no effective way of exercising its authority to dismiss chapter 7 cases under section 707(b) *sua sponte*.

A court that relies on its own judgments to identify excessive expenses can draw on its own experience generally or specifically within the geographic area where the debtor resides.[22] The court cannot, however, rely on its value judgments in a manner that fails to give effect to the section 707(b) presumption.

In order to overcome the section 707(b) presumption in favor of the relief sought by Debtor, the court needed to articulate and explain the clear abuse before it. Interpreting the presumption in this manner ensures that the Debtor receives the benefit of the doubt that the presumption is designed to provide, and ensures that the reviewing court is presented with the precise factors upon which the bankruptcy court's substantial-abuse determination is based. Here, the court did not explain why Debtor's various budget items were excessive or identify what

factors in addition to ability to pay and excessive spending, if any, the court was relying on in finding substantial abuse (such as Debtor's stable employment or lack of pre-petition health calamity). Accordingly, we must reverse.

The court's finding of ability to pay was based on a reduction of Debtor's future expenses to below the level required for Debtor to meet her basic needs as established by the unadjusted IRS Standards. *Compare Education Credit Mgmt. Corp. v. Howe (In re Howe)*, 319 B.R. 886 (9th Cir. BAP 2005) (noting that unadjusted IRS Standards do not provide for certain expenses courts have recognized as necessary to maintenance of minimal standard of living) *with Kelly*, 841 F.2d at 915 n. 9 (adopting less restrictive "best efforts" approach under section 1325(b)(2)(A) as test for determining debtor's "ability to pay").[23] The unadjusted IRS Standards represent a calculation of an individual's basic living expenses. *Howe*, 319 B.R. at 890. Here, the court's finding of "ability to pay" required lowering Debtor's future expenses more than $400 per month below the aggregate levels established by the unadjusted IRS Standards:[24]

22. Thus, we do not believe the court is duty bound to deny its own *sua sponte* inquiry into a substantial abuse case, as the court found itself obligated to do in *In re Love*, 61 B.R. 558, 559 (Bankr.S.D.Fla.1986), when it concluded its poetic disposition of the matter as follows:

> Tell me raven, how to go.
> As I with the ruling wrestled
> In the statute I saw nestled
> A presumption with a flavor clearly in the debtor's favor.
> No evidence had I taken
> Sua sponte appeared foresaken [sic].
> Now my motion caused me terror
> A dismissal would be error.
> Upon consideration of § 707(b), in anguish, loud I cried

> The court's sua sponte motion to dismiss under § 707(b) is denied.

23. The unadjusted IRS Standards are set forth at *www.irs.gov/individuals/article/0,,id=96543,00.html* (January 21, 2005). These expenses can be adjusted when adherence to them would result in the affected individual having inadequate means to provide for basic, necessary living expenses. *Howe*, 319 B.R. at 890–91.

24. Individuals who owe taxes to the IRS are allowed the total "National Standards" for their family size and income level, without regard to the amount actually spent. The National Standards embody five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. Unlike with respect

| IRS Primary Category | IRS Subcategory | IRS Allowance | Scheduled expenses | Expenses allowed by Court |
|---|---|---|---|---|
| National Standards | Food | $543 | $500 | $300 |
| National Standards | Housekeeping supplies | $51 | $50 | $0 |
| National Standards | Apparel & services | $207 | $270 [25] | $130 |
| National Standards | Personal care | $44 | $205 (gift/grooming) | $50 |
| National Standards | Misc. | $108 | $200 (recreation) | $50 |
| Housing and Utilities [26] | N/a | $1,712, $1,748 [27] | $1,712, $1,779 [28] | $1,712 |
| Transportation | Car ownership | $475 | $488 | $350 |
| Transportation | Operating costs | $353 | $332 [29] | $332 |
| | | $0 | $132 [30] | $132 |
| **Total** | | $3,493, $3,529 | $3,889, $3,960 | $3,056 |

■ To the extent the court relied primarily on Debtor's future ability to pay in finding substantial abuse, it improperly applied an overall "subsistence" standard to a determination of what would be expected of Debtor to avoid abusing her bankruptcy entitlement.[31] We also note that the court's finding of "ability to pay" omitted the mandatory ten percent chapter 13 Trustee fee, fees for Debtor's counsel, and Debtor's rent increase, after subtraction of which Debtor, living at the subsistence level allowed by the court, would have only

to the National Standards, the taxpayer is allowed the lesser of the amount actually spent or the standard Housing and Utilities expenses and Transportation expenses.

25. Includes Debtor's clothing expense ($210) and laundry/dry cleaning expense ($60).

26. Debtor's rent ($1,420, $1,491), Cable TV/Internet ($90), electricity and heating fuel ($80), water and sewer ($30), renter's insurance ($17), and telephone ($75).

27. The smaller number does not include Debtor's rent increase. The larger number includes the portion of Debtor's rent increase ($36) allowed by the IRS Standards.

28. The smaller number does not include Debtor's rent increase; the larger number does.

29. Car insurance ($112); operating costs ($210).

30. Medical and dental expenses ($65), health insurance ($2), and charitable contributions ($75).

31. Of course, inability to pay will not shield a debtor from dismissal under section 707(b) when bad faith is otherwise shown. *Kelly*, 841 F.2d at 915. There has been no finding of bad faith here, and we reject Debtor's argument that a finding of bad faith is required when a debtor cannot repay all of her debt. *See, e.g., Price*, 353 F.3d at 1140 (noting that Congress committed question of what constitutes substantial abuse to the discretion of bankruptcy judges within context of Bankruptcy Code).

had $31,350.24 [32] to repay the $139,561 owing to her creditors, rather than the $40,000 found by the court.

We acknowledge that the court had broad discretion and that it was also concerned about the Debtor's long-time habit of borrowing in excess of her ability to pay. Indeed, *Price* tells us that consideration of such habits, and of an excess budget, may also bear on a court's decision to dismiss under section 707(b).[33] However, the court's discretion is bounded by the presumption, which must be applied expressly to ensure that debtors receive its benefit.

## VII. CONCLUSION

For the reasons stated herein, we REVERSE and REMAND with instructions for the court to reconsider, in a manner consistent with this opinion, whether, expressly giving the benefit of "any doubt" to Debtor, substantial abuse is "clearly" present in this case.

---

**32.** $4,179.64/month of income—$3,056 in monthly subsistence expenses allowed by court = $1,123.64—$112.36 (10% trustee fee)—$69.44 ($2,500 attorneys fees amortized over 36 months)—$71 (rent increase) = $870.84 × 36 = $31,350.24. This is a 22.4% dividend.

**33.** *See supra* note 19.