MEMORANDUM *
Educational Credit Management Corporation appeals the district court’s affirmance of the bankruptcy court’s partial discharge of Ali Mandighomi’s student debt. We have jurisdiction under 28 U.S.C. §§ 158,1291, and affirm.
Bankruptcy courts are permitted to discharge a portion of a student debt if that portion meets the “undue hardship” test of 11 U.S.C. § 523(a)(8) (2002).[1] Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1172-75 (9th Cir.2003). Assessing whether undue hardship is present requires applying the three-prong test adopted by this Circuit in United Student Aid Funds v. Pena (In re Pena), 155 F.3d 1108, 1110-12 (9th Cir. 1998), and the burden on all three prongs lies on the debtor, Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087-88 (9th Cir.2001).
The bankruptcy court did not clearly err in concluding that Mandighomi adequately established that he could not maintain a “minimal” standard of living while paying his student loans, thus satisfying *403 the first prong. The bankruptcy court looked beyond the IRS’s National Standards for allowable living expenses when evaluating the Mandighomis’ housing and food costs, so that the Standards were not used “as the sole measure of what is necessary to maintain a minimal standard of living,” Educ. Credit Mgmt. Corp. v. Howe (In re Howe), 319 B.R. 886, 892-93 (9th Cir. BAP 2005). Even if the bankruptcy court might have relied excessively on the Standards when evaluating the Mandighomis’ utilities, this portion was so small in comparison to the monthly deficit that any potential excess in the utilities could not possibly impact the ultimate first prong inquiry. See id. at 891 n. 6; Pa. Higher Educ. Assistance Agency v. Birrane (In re Birrane), 287 B.R. 490, 496 & n. 4 (9th Cir. BAP 2002). ECMC implores us to rule that the Standards ought to be considered a ceiling on what is a “minimal” standard of living, but we find it unnecessary to decide this question since the bankruptcy court found that the Mandighomis’ budget was in line with the Standards, not that they were exceeded in a material yet acceptable way, and ECMC has not argued that such an excess existed.[2] While Mandighomi’s failure to provide evidence that he cannot live more cheaply closer to his work breeds speculation, ECMC’s failure to provide any evidence on housing costs gives us no basis on which to reverse the bankruptcy court’s holding that what Mandighomi did offer on this topic met his burden. In light of the latitude given to bankruptcy courts by In re Rifino, 245 F.3d at 1088, this contention, as well as ECMC’s argument as to cable, fails.
We recently clarified that the second prong does not contain a “requirement that additional circumstances be ‘exceptional’ in the sense that the debtor must prove a ‘serious illness, psychiatric problems, disability of a depend[e]nt, or something which makes the debtor’s circumstances more compelling than that of an ordinary person in debt.’” Educ. Credit Mgmt. Corp. v. Nys (In re Nys), 446 F.3d 938, 946 (9th Cir.2006) (alteration in original) (quoting Nys v. Educ. Credit Mgmt. Corp. (In re Nys), 308 B.R. 436, 444 (9th Cir. BAP 2004)). Although much of Mandighomi’s efforts to exploit his M.B.A. centered on finding a management job within the information technology field, these efforts were sufficient, cf. In re Birmne, 287 B.R. at 499 (faulting debtor for not applying for any jobs in field of her bachelor’s degree), and we find no error in the bankruptcy court’s decision that Mandighomi has adequately shown that he cannot increase his income enough, either with his current job or with another, to enable him to pay his student debt. Nor did the bankruptcy court’s consideration of the continuing burden placed upon Mandighomi by his children’s needs, reflected in its tailored partial discharge, fail to account for the factors ECMC argues on appeal. The bankruptcy court’s decision to accept the Mandighomis’ testimony on this issue cannot be deemed clearly erroneous simply because the debtors did not provide corroboration. Cf. In re Rifino, 245 F.3d at 1086 (“Where there are two permissible views of the evidence, the factfinder’s *404 choice between them cannot be clearly erroneous.”) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). We affirm the bankruptcy court’s conclusion that Mandighomi’s dim earnings forecast, children’s needs, age, and size of debt make it such that his “inability to make payments will likely persist throughout a substantial portion of the loan’s repayment period.” In re Nys, 446 F.3d at 946; see also id. at 947 (listing factors).
Finally, we hold that the Mandighomis have satisfied the third prong, good faith, which is measured by their effort to maximize income, minimize expenses, and seek alternative repayment plans, Educ. Credit Mgmt. Corp. v. Mason (In re Mason), 464 F.3d 878, 884 (9th Cir.2006). ECMC’s attack on the number of resumes Mandighomi has mailed ignores his other job search activities, the fact that he had worked a second job delivering pizza, and that he currently spends 70 hours a week working and commuting. Cf. id. at 885 (finding no good faith where debtor held only one part-time job, made an insufficient job search given his free time, and did not re-attempt the bar exam). ECMC’s argument that Mandighomi’s wife Luz ought to be working outside the home is similarly unpersuasive for its failure to acknowledge their fifteen-year-old’s ADD needs as well as the fact that Mandighomi’s work and commuting schedule leave Luz as the only one to cook, clean, and take care of their four children. Given Mandighomi’s efforts and the uncontroverted evidence of Luz’s limited time, education, work experience, and hence earning potential, the bankruptcy court did not err in holding (while assessing their standard of living) that the Mandighomis have maximized their income. Similarly, its conclusion that the family has minimized expenses also was not clearly erroneous. As for the remaining aspect of good faith, it is true that Mandighomi’s failure to explore repayment alternatives works against him on the good faith prong, id. at 884-85, but here Mandighomi did defer his payments before seeking a discharge, see In re Pena, 155 F.3d at 1114, and all of the payment options suggested by ECMC are far beyond Mandighomi’s ability to pay. Under these circumstances, we find no error in the bankruptcy court’s good faith determination.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. This section was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, § 220, 119 Stat. 23, 59. Because the Mandighomis filed their bankruptcy petition on August 8, 2002, these 2005 amendments do not apply. See id. § 1501, 119 Stat. at 216.

. We also decline ECMC’s invitation to hold that spending at the level of the Standards will always exceed a “minimal” standard of living. ECMC’s most persuasive authority only suggests that the Standards exceed a “minimal” standard of living "in many instances," not every instance, and actually suggests that bankruptcy jurisprudence can inform when spending above-average amounts is necessary for a "minimal” standard of living — thus suggesting that above-average amounts can sometimes survive this prong of the undue hardship test. See 34 C.F.R. § 34.24(e); Administrative Wage Garnishment, 68 Fed.Reg. 8142, 8151 (Feb. 19, 2003).