In re Thomas W. PRICE, Debtor,

**Thomas W. Price, Appellant,**

v.

**United States Trustee, Appellee.**

No. 02–16458.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 2003.

Filed Jan. 7, 2004.

John A. White, Jr., Reno, NV, for the appellant.

Nicholas Strozza and William B. Cossitt, Office of the United States Trustee, United States Department of Justice, Reno, NV, for the appellee.

Before MARY M. SCHROEDER, Chief Judge, SIDNEY R. THOMAS, and RICHARD R. CLIFTON, Circuit Judges.

THOMAS, Circuit Judge.

In this appeal, we consider whether the bankruptcy court appropriately dismissed a Chapter 7 bankruptcy for substantial abuse pursuant to 11 U.S.C. § 707(b). Under the circumstances presented by this case, we conclude that it did.

## I

Thomas Price is a computer consultant. In addition, during the relevant period, he and his wife operated several women's clothing stores in Reno, Nevada. Price had financed these stores through cash and credit card advances. The businesses failed, along with his own computer consulting business. Price estimates that he and his wife lost approximately $250,000 during this period of time. After the business failures and after Price and his wife divorced, Price began working as an employee of JAT Computer Consulting services, earning a salary of $115,000 a year. Price filed a voluntary petition in bankruptcy under Chapter 7 of the United States Bankruptcy Code.

In his bankruptcy schedules, Price listed total debts of $322,552.81, $167,469 of which was secured debt, $19,356.50 priority debt, and $135,727.31 unsecured nonpriority debt. Additionally, $141,511 is secured on Price's residence, and he claimed exemption to $12,667.34 based on the residence's $155,000 market value. He listed a gross income of over $10,700 per month and nets over $7,200 in monthly income.

Accompanying his petition, Price included an exhibit claiming $101,690.95 in total business debt, and $72,150.86 in personal debt. Price excluded from these figures $141,511 in debt secured on his residence and $7,200 in priority debt owed to his former wife. Price's petition claimed that "business debts predominate if debt secured by exempt home is excluded." Price's petition also indicated that he had $4,775.97 in current monthly expenditures, which left $2,497.37 in disposable monthly income.

Based on these facts, the United States Trustee sought to dismiss Price's petition for substantial abuse under 11 U.S.C. § 707(b). After notice and a hearing, the bankruptcy court concluded that Price's debts were primarily consumer, and that granting relief as sought by the petition would be an abuse of Chapter 7 because Price had the ability to pay his debts. As a result, the petition was dismissed unless Price filed a Chapter 13 bankruptcy within 30 days. The bankruptcy court entered a final order dismissing the petition. Price timely appealed the dismissal to the Bankruptcy Appellate Panel, which affirmed the order of the bankruptcy court. This timely appeal followed.

 We review the decisions of the Bankruptcy Appellate Panel *de novo.* *Hanf v. Summers (In re Summers),* 332 F.3d 1240, 1242 (9th Cir.2003). We review the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *Id.* (citing *Einstein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.),* 319 F.3d 1166, 1170 (9th Cir.2003)). We review a bankruptcy court's decision to dismiss a case for abuse of discretion. *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1223 (9th Cir.1999).

## II

 Section 707(b) of the Bankruptcy Code allows a court to dismiss a Chapter 7 bankruptcy case, either *sua sponte* or upon suggestion of the United States Trustee, when an individual has primarily consumer debt and the court finds that granting relief would be a substantial abuse of the provisions of the chapter. Specifically, § 707(b) provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter

whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

Congress added this section to the Code "in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid their obligations." 6 *Collier on Bankruptcy* ¶ 707.04, at 707–15 (Alan N. Resnick et al. eds., 15th ed.2001); *see also* S.Rep. No. 98–65, at 54 (1983).

██ The first prerequisite to dismissal under section 707(b) is that the debtor have primarily consumer debt; the second requirement is a finding by the court that granting the debtor's petition would be a "substantial abuse" of Chapter 7. *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 912–13 (9th Cir.1988).

### A

Price concedes that his debt as listed in his schedules is primarily consumer debt. However, he contends that his mortgage debts should not be included in the calculation of "consumer debts." We specifically rejected this notion in *Kelly,* noting that "[t]he statutory scheme so clearly contemplates that consumer debt include debt secured by real property that there is no room left for any other conclusion." *Id.* at 912. Price claims that this holding was

dicta in *Kelly* that we may disregard. Clearly, it was not.

■■■■ Under *Kelly,* whether or not a particular secured debt is excluded from inclusion as "consumer debt" under § 707(b) depends on the purpose of the debt. *Id.* at 913. Under the Bankruptcy Code, "consumer debt" is "debt incurred by an individual primarily for a personal, family or household purpose[.]" § 101(8). As we held in *Kelly,* this includes all secured debt incurred for personal, family, or household purposes. *Id.* In this case, Price's personal residence was secured by two mortgages. The first, in the amount of $120,000, secured debt incurred to purchase the home; the second, in the amount of $21,511, secured debt incurred to finance household improvements. Thus, there is no question that the secured debt at issue was incurred "primarily for a personal, family or household purpose" and must be considered "consumer debt" for the purposes of § 707(b).

Price argues that, even if residential mortgages are considered consumer debt, purchase money mortgages should be exempt from inclusion. He contends that inclusion of purchase money mortgage debt in § 707(b) improperly discriminates against homeowners in violation of federal housing policies favoring home ownership. He relies upon the Homeless Assistance Housing Assistance Supportive Housing Program, 42 U.S.C. §§ 11381–11389, and the home mortgage interest deduction provided in the Internal Revenue Code § 163(h), as examples of federal housing policy that would be thwarted by considering purchase money mortgage debt as consumer debt under § 707(b). Price cites no authority for this proposition, and there is none. Generalized expressions of federal policy contained in other federal statutes do not take precedence over specific provisions of the Bankruptcy Code. *See United States v. Padilla (In re Padilla),* 222 F.3d 1184, 1192 (9th Cir.2000); *Am. Bicycle Ass'n v. United States (In re Am. Bicycle Ass'n),* 895 F.2d 1277, 1280 (9th Cir.1990).

Moreover, we have rejected the claim that § 707(b) necessarily discriminates against homeowners. In *Kelly,* we explained that the existence of primarily consumer debt alone does not result in dismissal under § 707(b), because the bankruptcy court must still make a finding of substantial abuse. Consequently, a debtor truly in need of a fresh start will not be subject to dismissal. 841 F.2d at 913. Thus, Price's arguments are unavailing.

■■■■ Under the rubric established by *Kelly,* a debtor is considered to have "primarily consumer debts" under § 707(b) when consumer debts constitute more than half of the total debt. Here, when the debt securing Price's residence is included, well over half the total debt reported is consumer debt. Thus, the first requirement of § 707(b) is satisfied.

## B

■■■■ The remaining substantive issue is whether Price meets the substantial abuse standard of Section 707(b). The term "substantial abuse" is not defined in the Bankruptcy Code. Rather, courts have examined the totality of the circumstances in determining whether substantial abuse exists in a particular case, utilizing criteria such as the following:

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

(4) Whether the debtor's proposed family budget is excessive or extravagant;

(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

3 *Norton Bankruptcy Law and Practice 2d* § 67:5, at 67–10 (William L. Norton, Jr. et al. eds., 1997).

■ The primary factor defining substantial abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter 13 plan. Thus, we have concluded that a "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal." *Kelly*, 841 F.2d at 914.

■ The United States Trustee argues that we need not reach any of the issues raised by Price because Congress created a bright line test: that dismissal is required whenever a debtor is able to fund a Chapter 13 plan. However, the text of the section and its legislative history belie this interpretation. Indeed, Congress specifically rejected such proposals. *See* 6 *Collier* ¶ 707.04, at 707–16. Rather, Congress committed the question of what constitutes substantial abuse to the discretion of bankruptcy judges within the context of the Code. Section 707(b) provides that the court "may" dismiss a case "if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter." Put another way, while "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal," *Kelly*, 841 F.2d at 914, the debtor's ability to pay his or her debts does not *compel* a section

707(b) dismissal of the petition as a matter of law. In addition, as *Kelly* noted, a bankruptcy court could make a finding of substantial abuse under the facts of a particular case even if the debtor did not have the ability to fund a Chapter 13 plan. *Id.* at 914–15. Thus, *Kelly* did not establish an absolute, *per se* rule. Rather, *Kelly* quite appropriately held that ability to fund a Chapter 13 plan is the most important consideration under § 707(b), and that a finding of ability to pay alone is sufficient to sustain a § 707(b) dismissal.

In this case, the bankruptcy court relied upon Price's ability to pay his debts to make a finding of substantial abuse. Although the court was not compelled to make the finding, it was well justified in relying on this finding in ordering dismissal of the petition under § 707(b).

### C

Price contends the bankruptcy court erred in making a finding of substantial abuse in this case because the debts he seeks to discharge in his Chapter 7 petition are primarily trade debts. He argues that the philosophy of § 707(b) is the protection of consumer creditors. Thus, he reasons, a finding of substantial abuse cannot be made when the debt to be discharged is primarily commercial. In short, he would have us construe the requirement that the debtor be one "whose debts are primarily consumer debts" to mean a debtor "whose debts *to be discharged* are primarily consumer debts."

■ In construing a statute, "we begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391

(1992)). If the statutory language is unambiguous, then our "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).

■ In this case, the statutory language is unambiguous. Indeed, we examined the specific statutory language in question in *Kelly* and found it "clear." 841 F.2d at 912. Adopting Price's interpretation would amount to rewriting the statute. If Congress had intended to impose such a restriction on the court's power to dismiss a case for substantial abuse, it easily could have done so. Given the plain words of the statute, we cannot conclude that Congress meant "primarily consumer debts" to refer only to those debts sought to be discharged rather than the aggregate debts listed on the bankruptcy schedules.

Contrary to Price's assertion, *United States v. Padilla (In re Padilla),* 222 F.3d 1184 (9th Cir.2000), does not compel a different conclusion. Price contends that *Padilla* "makes it crystal clear that the framers of § 707(b) had no intention of preventing a consumer from using the bankruptcy code to discharge his trade debt." *Padilla* did not involve § 707(b). It held that bad faith *per se* does not constitute cause for dismissal under § 707(a). *Id.* at 1194. It is true that *Padilla* discussed the general rationale underpinning § 707; however, it did not hold that a dismissal for substantial abuse under § 707(b) cannot occur if the debt to be discharged is primarily trade debt. There is nothing in *Padilla* that is inconsistent with *Kelly,* nor is there anything in *Padilla* that would preclude a finding of substantial abuse in a consumer debtor bankruptcy when the debts sought to be discharged were primarily trade debt.

### III

In sum, the bankruptcy court was entirely justified in dismissing the petition for substantial abuse under 11 U.S.C. § 707(b) based on findings that the debtor had primarily consumer debts and had the ability to fund a Chapter 13 plan, despite evidence that the debt to be discharged primarily consisted of commercial debt.

**AFFIRMED.**