FILED

AUG 23 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )    BAP No.   CC-15-1441-KuFD
                                    )
DESIREE H. DRURY,                   )    Bk. No.   2:15-bk-17125
                                    )
              Debtor.               )
_____)
                                    )
DESIREE H. DRURY,                   )
                                    )
              Appellant,            )
                                    )
v.                                  )    **MEMORANDUM**[*]
                                    )
UNITED STATES TRUSTEE,              )
                                    )
              Appellee.             )
_____)

Argued and Submitted on July 28, 2016
at Pasadena, California

Filed – August 23, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding

_____

Appearances:    Stephen R. Wade argued for appellant Desiree H.
                Drury; John Postulka argued for appellee United
                States Trustee.

_____

Before: KURTZ, FARIS and DUNN, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

When a debtor does not own an automobile but makes monthly lease or loan payments as a prerequisite to his or her continued possession and use of a vehicle, may the debtor claim an expense allowance under the means test for car "ownership" expenses? We answer this question in the affirmative. Even though the debtor Desiree H. Drury is not the owner of the automobile, is not the borrower under the automobile loan and is not legally obligated to repay that loan, it is undisputed that Drury will lose possession of the automobile unless she continues to make payments to the lender. This undisputed fact establishes for means test purposes that the relevant IRS local transportation expense standard of $517 for car ownership expenses is "applicable" to Drury and thus she is entitled to claim this amount for purposes of determining whether her chapter 7[1] case filing was presumptively abusive under § 707(b)(2).

The bankruptcy court incorrectly disallowed Drury's car ownership expense claim. As a result, it incorrectly determined that Drury's chapter 7 case should be dismissed as presumptively abusive under § 707(b)(1) and (2).

Additionally, the bankruptcy court rendered insufficient findings to support its determinations that the chapter 7 petition was filed in bad faith under § 707(b)(3)(A) and that the chapter 7 case was abusive under the totality of the debtor's

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

financial circumstances pursuant to § 707(b)(3)(B). Accordingly, the bankruptcy court's dismissal order is VACATED and this matter is REMANDED for further proceedings.

**FACTS**

In May 2015, Drury commenced her bankruptcy case by filing a voluntary chapter 7 petition. This was not Drury's first bankruptcy case. In fact, she had filed six prior bankruptcy cases in the past five years, all of which were dismissed for failure to comply with various Bankruptcy Code provisions and Rules. In addition, she also had filed a chapter 7 case in 2001, in which she obtained a discharge order.

The U.S. Trustee filed his motion to dismiss her most recent case in October 2015. The U.S. Trustee asserted that Drury had over $800 in monthly disposable income that she could use to repay her creditors and that, based on this amount, granting Drury relief under chapter 7 would be an abuse of the Bankruptcy Code.

According to the U.S. Trustee, the information provided on Drury's Official Form 22A reflected that Drury had over $100,000 in annual income and current monthly income (as defined in § 101(10A)) of $8,580 per month. However, Drury's initial Form 22A omitted some of her income. She only later disclosed that, in addition to her annual salary, she also received child support in the amount of $175 per month.

This is only one of several errors and omissions in the financial information Drury provided in her bankruptcy schedules and in her other bankruptcy filings. She also claimed in her initial Form 22A that she paid $60 per month for telephone

3

services and $40 per month in charitable contributions. Both of these claimed expenses turned out to be inaccurate. Similarly, Drury claimed $550 per month, in aggregate, for child care expenses and minor-child education expenses, but the only evidence she ever offered for these claimed expenses was a letter from a family friend stating that Drury paid her $75 per week for picking up two of Drury's children from school and for helping them with their homework.

In addition, in her Schedule B, Drury claimed to own a 2008 Toyota Camry worth $3,000. She also represented in her statement of intention regarding secured debts that the Toyota was property of her bankruptcy estate. She later admitted that she does not own the car and that she never has owned it. Instead, she informed the U.S. Trustee that her sister bought the car on credit on Drury's behalf because Drury did not have the credit to obtain an automobile loan in her own name. Nonetheless, Drury maintained that she drives the car and pays $540 every month to cover the loan payment for the vehicle.

The most hotly-disputed issue between the parties concerned the automobile expenses Drury claimed in her form 22A. Notwithstanding her admission that she did not own the 2008 Toyota Camry, Drury continued to contend that she was entitled to deduct from her income a vehicle "ownership" expense of $517 and a vehicle operating expense of $400. The U.S. Trustee contested these expense claims. According to the U.S. Trustee, Drury only was entitled to claim a $295 vehicle operating expense, and no vehicle ownership expense, because she did not own the Toyota.

As the U.S. Trustee put it, the allowed $295 vehicle

4

operating expense was a standard deduction permitted for debtors operating vehicles in the Los Angeles metropolitan area, and no vehicle expenses above that amount – ownership or operating expenses – could be claimed in the absence of ownership.[2]

The U.S. Trustee assailed Drury for her inflated and inaccurate expense claims and for her inaccurate and incomplete information regarding her income. He also challenged Drury's claim that she was entitled to deduct tax-related expenses of roughly $2,000. The U.S. Trustee instead insisted that she was entitled to deduct from her income, at most, roughly $1,500 for tax expenses.[3]

Based on these contentions, the U.S. Trustee asserted that Drury's bankruptcy case should be dismissed as a presumptively abusive bankruptcy filing under § 707(b)(2) and, alternately,

[2]The U.S. Trustee posited, without citing any authority, that the age of the Toyota would have entitled Drury to a $200 older vehicle operating expense if Drury had actually owned the vehicle. We disagree. In Drummond v. Luedtke (In re Luedtke), 508 B.R. 408, 411 (9th Cir. BAP 2014), we held that this older vehicle operating expense is not part of the Internal Revenue Service's National Standards or its Local Standards, which generally control which expenses above-median-income debtors may claim for purposes of calculating their disposable income under 11 U.S.C. § 1325(b)(2). Given our decision in In re Luedtke, there is no legal or logical reason why a chapter 7 debtor should be able to claim an older vehicle operating expense for chapter 7 means test purposes. See In re Willingham, 520 B.R. 818, 823 (Bankr. E.D. Cal. 2014).

[3]The U.S. Trustee stated in his responsive appeal brief that the bankruptcy court did not render any findings regarding Drury's tax-related expense claim and did not rely on the tax-related expense issue to support its ruling. In light of our analysis and resolution of this appeal, there is no need for us to consider further Drury's tax-related expenses.

5

that her case should be dismissed as abusive under the totality of Drury's financial circumstances pursuant to § 707(b)(3)(B). Oddly, the U.S. Trustee's dismissal motion contained no argument under § 707(b)(3)(A) specifically asserting that Drury filed her bankruptcy in bad faith, even though the U.S. Trustee's moving papers asked for relief under both § 707(b)(3)(A) and (B), as well as under § 707(b)(2).

The bankruptcy court held a hearing on the U.S. Trustee's motion to dismiss. At the hearing, Drury admitted that she is not legally obligated to make the car loan payment every month. She nonetheless insisted that her continued possession and use of the Toyota depends upon her continued monthly payments on the automobile loan. According to Drury, if she stopped making the monthly loan payments, the lender would repossess the vehicle. The U.S. Trustee never challenged Drury's factual assertion regarding the consequences of her not making the loan payments. Instead, the U.S. Trustee argued that, as a matter of law, debtors cannot claim a loan or lease payment as a car ownership expense under the IRS's local transportation expense standard unless they are legally obligated to make that payment. The U.S. Trustee contended that, without such a legal obligation, the debtor can stop making the car payments at any time, and thus counting the payment for means test purposes would not accurately reflect what Drury can afford to pay her creditors.

At the conclusion of the hearing, the bankruptcy court determined that the U.S. Trustee's position on the vehicle ownership expense was correct. The court also found that "[t]he Debtor clearly has violated her duty of truthful disclosure

6

notwithstanding her lengthy experiences with the bankruptcy system and in spite of her right to amend her Schedules." Findings of Fact and Conclusions of Law (Dec. 14, 2015) at p. 2.

In addition, the court further found that Drury had a "substantial ability" to repay her debts, especially in light of the substantial amount of her income, "though her financial habits have been to some extent careless." Id.

While the bankruptcy court specified that the U.S. Trustee had established grounds for dismissal under § 707(b)(1), (b)(2), (b)(3)(A) and (b)(3)(B), the bankruptcy court made no explicit findings regarding Drury's bad faith. Nor did the bankruptcy court comment on Drury's bad faith at the dismissal motion hearing.

On December 14, 2015, the bankruptcy court entered its order dismissing Drury's bankruptcy case, and Drury timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court abuse its discretion when it dismissed Drury's bankruptcy case under § 707(b)(1), (b)(2), (b)(3)(A) and (b)(3)(B)?

**STANDARDS OF REVIEW**

We review dismissals under § 707(b) for an abuse of discretion. Ng v. Farmer (In re Ng), 477 B.R. 118, 125 (9th Cir. BAP 2012); Ceniceros v. Yaqub (In re Ceniceros), 2012 WL 2017969, at *5 (Mem. Dec.) (9th Cir. BAP June 5, 2012).

7

The bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible or without support in the record. See United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

**1. The Means Test and Its Expense Allowance Standards – Generally**

As amended in 2005, the Bankruptcy Code authorizes bankruptcy courts to dismiss as abusive certain chapter 7 cases and presumes that abuse is present when the debtor fails what commonly is known as the "means test." See § 707(b)(1) & (b)(2)(A); see also Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045, 1048 (9th Cir. 2009). The means test measures the debtor's "current monthly income"[4] and determines whether that income (less certain allowed expenses and then multiplied by 60) exceeds threshold amounts designated in the statute. § 707(b)(2)(A). At the time of Drury's bankruptcy filing, the relevant designated statutory threshold amount was $12,475. Id.

There is no genuine dispute regarding the amount of Drury's current monthly income. Instead, this appeal hinges on the transportation expense amounts Drury attempted to deduct from her current monthly income and whether the bankruptcy court correctly disallowed most of Drury's claimed transportation expenses. But before we look at any of the transportation expense claims, a bit of background on the means test and its expense standards will

---

[4]Generally speaking, the term "current monthly income" means the debtor's average monthly income, regardless of source, and includes amounts paid by others on a regular basis for the debtor's household expenses. For the full definition of "current monthly income" please see § 101(10A).

provide some helpful context.

Before the passage of the Bankruptcy Abuse Prevention and Consumer protection Act of 2005, Pub. L. 109–8, 119 Stat. 23 (2005) ("BAPCPA"), the Bankruptcy Code instructed the bankruptcy courts to employ a presumption that chapter 7 debtors were entitled to chapter 7 relief. In re Egebjerg, 574 F.3d at 1048. But the 2005 BAPCPA amendments replaced this presumption with an emphasis on maximizing the recovery for the debtor's creditors. Id. As In re Egebjerg explained, BAPCPA accomplished this sea change in chapter 7 practice by introducing the means test to determine if the debtor could repay at least some amount to his or her creditors. Id.

The expense side of the means test equation, § 707(b)(2)(A)(ii)(I), was novel. Prior to BAPCPA, there was no need for chapter 7 debtors to prove routinely that they had no ability to repay their creditors over time, so there was no routine need to measure the debtor's allowable expenses for purposes of calculating the debtor's disposable income (if any). See In re Egebjerg, 574 F.3d at 1048. For purposes of determining the debtor's allowable expenses, the means test provides in part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief . . . .

9

§ 707(b)(2)(A)(ii)(I).[5]

While there is no pre-BAPCPA history of routinely measuring chapter 7 debtors' allowable expenses, the measuring of chapter 13 debtors' expenses, for the purpose of determining whether they were paying all of their disposable income to their creditors during the term of their chapter 13 plan, predates BAPCPA. See Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 65 & 78 (2011); In re Luedtke, 508 B.R. at 413. Before BAPCPA, bankruptcy courts had broad discretion to determine which expenses were reasonable and necessary for individual chapter 13 debtors to claim on a case-by-case basis. Ransom, 562 U.S. at 65.

Apparently unhappy with the "varying and often inconsistent determinations" that resulted from the pre-BACPA case-by-case approach, id. at 65, Congress specified in its BAPCPA amendments that the means test's standardized and mathematical approach for determining allowable expenses would be utilized to calculate the disposable income of both chapter 7 debtors and chapter 13 debtors whose income exceeded certain benchmarks. Id. at 65, 78; see also In re Luedtke, 508 B.R. at 413 ("BAPCPA replaced [the bankruptcy courts'] discretion with the 'means test' — a formulaic and mechanical method of assessing debtors' ability to pay.").

Indeed, Congress referred to its adoption of its means test

[5]In addition to the amounts provided for in the National Standards, the Local Standards and in the Other Necessary Expenses categories issued by the Internal Revenue Service, debtors can claim payments on account of secured and priority debt to the extent permitted by § 707(b)(2)(A)(iii) and (iv).

10

as "[t]he heart of [BAPCPA's] consumer bankruptcy reforms," because it would "help ensure that debtors who **can** pay creditors **do** pay them" and thereby would help prevent those abuses of the bankruptcy system that BAPCPA was intended to prevent. Ransom, 562 U.S. at 64 (emphasis in original) (citing H.R. Rep. No. 109-31, pt. 1, p. 2 (2005)).

**2. Proper Application of the Means Test Expense Allowance Standards to Transportation Expenses**

Having considered the background behind the means test and its expense allowance standards, we next consider the correct application of those standards to transportation expenses. The National Standards and Local Standards referenced in § 707(b)(2)(A)(ii)(I) (quoted above) are "tables that the IRS prepares listing standardized expense amounts" that are used to determine a taxpayer's ability to pay past-due tax liability. Ransom, 562 U.S. at 61. But the National Standards and Local Standards are not self-explanatory. Bankruptcy courts sometimes must consult the IRS's Financial Analysis Handbook (IRM 5.15.1) in order to correctly interpret and apply the National Standards and Local Standards. In re Luedtke, 508 B.R. at 411, 415; see also Ransom, 562 U.S. at 72-73 & n.7 (stating that the IRS's Financial Analysis Handbook is persuasive – but not controlling – authority for determining how bankruptcy courts should apply the IRS's National Standards and Local Standards). So long as the relevant portion of Financial Analysis Handbook is not inconsistent with the Bankruptcy Code, bankruptcy courts may refer to the Handbook as an aid in applying the National Standards and Local Standards. Id. at 72.

11

The relevant version of the Local Standards tables for transportation expenses merely state that a taxpayer may claim an expense of $517 in vehicle **ownership** costs and an expense of $295 in vehicle **operating** costs.  See IRS Local Transportation Expense Standards - West Census Region – for Cases Filed Between April 1, 2015 and May 14, 2015, Inclusive, as reported in, U.S. Trustee's website, https://www.justice.gov/ust/means-testing/means-testing-cases-filed-between-april-1-2015-and-may-14-2015-inclusive (last visited Aug. 16, 2016).  The commentary accompanying these tables states in part as follows:

> **b. Transportation Expense Standards** for taxpayers with a vehicle consist of two parts: nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs broken down by Census Region and Metropolitan Statistical Area (MSA).  A conversion chart has been provided with the standards that lists the states that comprise each Census Region, as well as the counties and cities included in each MSA.  The ownership cost portion of the transportation standard, although it applies nationwide, is still considered part of the Local Standards.  The ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense.  A single taxpayer is normally allowed one automobile.
>
> The operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls.
>
> If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense.  **If a taxpayer has a car, but no car payment, only the operating costs portion of the transportation standard is used to figure the allowable transportation expense**.  In both of these cases, the taxpayer is allowed the amount actually spent, or the standard, whichever is less.

Census Bureau, IRS Data and Administrative Expenses Multipliers for Cases Filed Between April 1, 2015 and May 14, 2015, Inclusive as reported in, U.S. Trustee's website, https://www.justice.gov/

12

ust/means-testing/means-testing-cases-filed-between-april-1-2015-and-may-14-2015-inclusive (last visited Aug. 16, 2016) (emphasis added).

After reviewing substantially similar IRS materials, Ransom held: (1) that the IRS's vehicle ownership expenses provided for in its Local Standards only consist of lease payments or loan payments; and (2) that a debtor who does not make payment on a car lease or a car loan cannot claim vehicle ownership expenses. Ransom, 562 U.S. at 71-72. In so holding, Ransom explained that vehicle ownership expense amounts are not "applicable" within the meaning of § 707(b)(2)(A)(ii)(I) (and hence not allowable as claimed) unless the debtor incurred some vehicle ownership expenses of the type enumerated in the IRS's Local Standards for transportation expenses. Id. at 69-72.

**3. Proper Treatment of Drury's Claimed Transportation Expenses**

Here, Drury conceded that she does not own the Toyota she originally listed on her Schedule B and that she is not indebted under any car lease or car loan. According to the U.S. Trustee, Drury cannot claim the loan payments she makes because she is not legally obligated to make those payments. Without any legal obligation, the U.S. Trustee reasons, Drury could stop making the car payments at any time she wants, so the amount of her car payments could be made available to pay back her creditors.

We disagree. Nothing in the Bankruptcy Code or in the IRS Collection Financial Standards suggests that debtors only may claim as local transportation expenses car loan or lease payments they make for which they are personally liable. In fact, the language of the statute points in the opposite direction:

13

"Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." Although the meaning of the "notwithstanding" provision is murky, it cuts against the argument that a car "ownership" expense only counts if the debtor is legally obligated to pay it, because in that case the debtor's car payments are "payments for debt[]." Further, when one considers the means test as a whole and its underlying purpose – to assure that debtors pay what they can to their creditors – it makes no sense to focus on the absence or presence of a legally enforceable debt. Most necessities of life – including most of those accounted for in the IRS Collection Financial Standards – are not debts.[6] And yet it still is essential for debtors to pay these amounts in order to maintain a certain minimal standard of living – as the IRS Collection Financial Standards explicitly recognize. See Wedoff, supra at 253 & n.57; see also Ransom, 562 U.S. at 70 ("Congress intended the means test to approximate the debtor's reasonable expenditures on essential items.").

Even without a legally binding obligation to make the payments for the car loan in her sister's name, if Drury is going to continue to use the car, she needs to continue to make the payments. Otherwise, the lender will repossess the vehicle, and Drury will be forced to get around Los Angeles without an automobile – an automobile that the IRS's Collection Financial

---

[6]For a complete description of the types of expenses the IRS Collection Financial Standards cover, please see Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231, 253–65 (2005).

14

Standards (and the means test) permit her to use (and pay for) even if this means that she will have less funds to pay her creditors.

Nor does Drury's lack of title to the automobile persuade us otherwise. We do not read the Local Standards' reference to car "ownership" expenses as making ownership of the automobile essential to claiming this transportation expense. In order to claim this transportation expense, the key determinant is whether the debtor makes a car lease payment or a car loan payment. Ownership of the car is no more essential to the necessity of this expense than a legally enforceable debt. Automobile lessees do not "own" the cars they drive. The Local Standards' reference to car "ownership" expenses can and should be considered a misnomer. Indeed, the Executive Office for U.S. Trustees has made this exact point in a published law journal article. See Mark A. Redmiles, The Supreme Court Interprets the Means Test, Am. Bankr. Inst. J., April 2011, at 18, 93 n.21.

Moreover, nothing in Ransom requires a different result. Ransom answered a different question: whether a debtor who does not make any car lease or car loan payments can claim under the means test a car ownership expense. Ransom in essence held that car ownership was not **sufficient** to entitle a debtor to claim this expense. Ransom did not address whether car ownership was **necessary** to entitle a debtor to claim this expense. For the reasons set forth above, we hold that debtors who make monthly car loan payments or car lease payments as a prerequisite to their continued use of the vehicle may claim this expense under the means test even if they do not own the vehicle.

15

**4. Correct Calculation of Drury's Disposable Income**

Aside from Drury's disallowed vehicle ownership expense of $517, Drury continues to claim an inflated $400 for vehicle operating expenses, which should not have exceeded $295 under the relevant version of the IRS's Local Standards for transportation expenses. Likewise, Drury continues to claim an inflated $550, in aggregate, for childcare and minor-child education expenses. Drury only substantiated $300 per month for child-related expenses, which she pays to a family friend for picking up two of her kids from school and helping them with homework. When the excess amounts from these expense categories is summed together ($105 + $250), the total reflects that Drury continues to overstate her allowable monthly expenses by $355 and thereby continues to understate her monthly disposable income by that same amount.

Drury has calculated her monthly disposable income as a negative amount – a negative $364.79. When the above-referenced $355 is added back into her understated monthly disposable income figure, the correct amount of Drury's monthly disposable income is roughly a negative $15. Because this amount, when multiplied by 60, does not exceed § 707(b)(2)(A)(i)(II)'s threshold amount of $12,475, the presumption of abuse under § 707(b)(2)(A)(i) is not triggered. Therefore, the bankruptcy court abused its discretion when it dismissed Drury's bankruptcy case as presumptively abusive.

**5. Dismissal of Drury's Bankruptcy Case under § 707(b)(3)(A) and (B)**

Because we have concluded that the bankruptcy court's

16

dismissal of the bankruptcy case under § 707(b)(1) and (b)(2) was an abuse of the bankruptcy court's discretion, we also need to address the bankruptcy court's alternate grounds for dismissal under § 707(b)(3)(A) and (B). See In re Egebjerg, 574 F.3d at 1048 ("the statute is framed to consider the presumptive abuse question first, and resorts to the totality of circumstances analysis [and the bad faith analysis] only if the debtor survives the means test.").

Under § 707(b)(3)(A), a chapter 7 case may be dismissed as abusive if the debtor filed his or her chapter 7 petition in bad faith. The Bankruptcy Code does not define bad faith. In the chapter 13 context, the Ninth Circuit has held that bankruptcy courts in determining bad faith should consider all relevant factors and, to aid bankruptcy courts in the bad faith assessment, set forth the following non-exhaustive list of factors to consider: (1) whether the debtor has stated inaccurate facts in his or her bankruptcy filings, attempted to improperly manipulate the Bankruptcy Code, or otherwise pursued bankruptcy relief in an inequitable manner; (2) the debtor's prior bankruptcy case filings and dismissals; (3) the motivation for the debtor's bankruptcy case filing, including any intent to impede state court litigation; and (4) any egregious conduct. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999).

These same factors are equally pertinent to the bad faith inquiry in the chapter 7 context. In re Mitchell, 357 B.R. 142, 154 (Bankr. C.D. Cal. 2006); see also Franco v. United States Trustee (In re Franco), 2016 WL 3227154, at *5 (Mem. Dec.) (9th

17

Cir. BAP June 2, 2016) ("Although Leavitt involved a chapter 13 case, we see no reason why the standards for a finding of bad faith in a chapter 7 case should be any different.").

Here, the only findings of the bankruptcy court arguably applicable to its bad faith determination were as follows:

> The Debtor clearly has violated her duty of truthful disclosure notwithstanding her lengthy experiences with the bankruptcy system and in spite of her right to amend her Schedules.
>
> Debtor nevertheless has a substantial ability to pay her creditors, especially as her income is substantial, though her financial habits have been to some extent careless.

Findings of Fact and Conclusions of Law (Dec. 14, 2015) at 2:25-28. The bankruptcy court did not specifically find that Drury acted in bad faith, nor is there any indication that the bankruptcy court considered all of the Leavitt factors or all relevant factors. While there are other facts in the record that might support a finding of bad faith, we cannot say on this record, and in light of the limited findings the bankruptcy court made, that we have a clear and complete understanding of the basis for the bankruptcy court's bad faith ruling. In re Leavitt, 171 F.3d at 1223. More importantly, on this record, we cannot ascertain whether the bankruptcy court applied the correct legal standard. Consequently, vacating the bankruptcy court's bad faith determination and remanding for further findings is necessary.

Under § 707(b)(3)(B), a chapter 7 case may be dismissed as abusive under the totality of the debtor's financial circumstances. In assessing the totality of the debtor's financial circumstances, we consider the same non-exhaustive list

18

of factors used by the Ninth Circuit for the determination of substantial abuse under pre-BAPCPA law. In re Ng, 477 B.R. at 126 (citing Price v. United States Trustee (In re Price), 353 F.3d 1135, 1139-40 (9th Cir. 2004)). These factors include:

> (1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims; [2] Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) Whether the debtor's proposed family budget is excessive or extravagant; (5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and (6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

Id. "[A] 'debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal.'" Id. (quoting In re Price, 353 F.3d at 1140).

Here, the bankruptcy court found that Drury had "a substantial ability to pay her creditors." But the bankruptcy court did not explain how it reached this conclusion for purposes of § 707(b)(3)(B). It very well might have been based on the bankruptcy court's erroneous disallowance of Drury's car loan payments as an actual and necessary transportation expense. For the same reasons we rejected this disallowance in the context of determining whether there was presumption of abuse under § 707(b)(2), we also reject this disallowance for § 707(b)(3)(B) purposes.[7] Because the bankruptcy court's findings were

---

[7]To be clear, the legal standards governing expense allowance under the means test (§ 707(b)(2)) and under the totality of the debtor's financial circumstances (§ 707(b)(3)(B)) are different. Compare Ransom, 562 U.S. at 65-66, with In re Ng,
(continued...)

19

insufficient on the record presented to afford us with a clear and complete understanding of the basis for the bankruptcy court's totality of the circumstances ruling, we must vacate the bankruptcy court's § 707(b)(3)(B) determination and remand for further findings regarding the totality of the debtor's financial circumstances.

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's dismissal order, and we REMAND this matter for further proceedings consistent with this decision.

---

[7](...continued) 477 B.R. at 126. Nonetheless, the bankruptcy court here did not sufficiently justify the disallowance of Drury's car ownership expense under either standard.

20